UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| MARIA G. DAVILA-HURTADO, ) | 3:06-CV-00403-BES (RAM) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| MICHAEL J. ASTRUE, ) Commissioner of Social Security, ) | |
| Defendant. ) | |

This Report and Recommendation is made to the Honorable Brian E. Sandoval, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Plaintiff filed a motion for remand of the commissioner's decision on April 20, 2007 (Doc. #15). Defendant opposed the motion and filed a cross-motion to affirm the commissioner's final decision on May 21, 2007 (Doc. #16). Plaintiff replied and opposed Defendant's motion on June 8, 2007 (Doc. #17).

**I. FACTUAL AND PROCEDURAL BACKGROUND**

At the time of the decision, Plaintiff Maria G. Davila-Hurtado was a fifty-five year old woman with a college degree and a work history as a clerk, bank teller, vault teller and manager (Tr. 19). Plaintiff filed an application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on June 16, 2003 (Tr. 18) asserting chronic inflammation of the intestines, digestive problems, bipolar disorder, manic depression, diarrhea,

headaches, stomach aches and cramps have caused her to be permanently and completely disabled since June 16, 2003 (Tr. 19, Doc. #15 at 1).

Plaintiff, represented by attorney Dennis Cameron, appeared and testified at the disability hearing on August 25, 2005 (Tr. 18). The Administrative Law Judge (ALJ) followed the five-stage procedure for evaluating disability claims, set forth in C.F.R. § 404.1520, and found Plaintiff could perform her past relevant work as a manager of a check cashing facility; therefore, the ALJ's analysis ended there (Tr. 27). Accordingly, in the decision issued on December 21, 2005, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act (*Id.*). Plaintiff appealed the decision and the Appeals Council denied review (Tr. 8-10). Thus, the ALJ's decision became the final decision of the Commissioner (*Id.*).

Plaintiff now appeals the ALJ's decision to the district court, in which she argues: (1) the ALJ incorrectly found the opinions of the consulting examiners not credible; (2) the ALJ incorrectly determined Plaintiff's mental impairments were not severe; and, (3) the ALJ used an incomplete RFC to determine Plaintiff could return to her past relevant work (Doc. #15).

Both parties stipulate that the ALJ fairly and accurately summarized the material evidence and testimony (Doc. #15 at 2, Doc. #16 at 2).

## II. STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza*, 50 F.3d at 749. The ALJ alone is responsible for

2

determining credibility, and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986); 20 C.F.R. § 404.1512(a). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected … to last for a continuous period of not less than 12 months …" 42 U.S.C. §423 (d)(1)(A).

### III. DISCUSSION

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987); *see* 20 C.F.R. §§ 404.1520, 416.920. If at any step the SSA can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

In the first step, it must be determined whether the claimant is engaged in "substantially gainful activity"; if so, a finding of nondisability is made and the claim is denied. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in substantially gainful activity, the second step requires determining whether her impairments or combinations of impairments are "severe." *Yuckert*, 482 U.S. at 140-41. If a claimant's impairments are so slight that they cause no more than minimal functional limitations, it will be determined that the claimant is not disabled. 20 C.F.R. § 404.1520. If, however, it is found that the claimant's impairments are severe, such impairments will be presumed to be sufficiently severe provided the impairments meet or equal the impairments described in the Commissioner's Listing of Impairments and are of sufficient duration. 20 C.F.R. § 404.1520(d). If the claimant's impairments meet or equal a listed impairment, the claimant is conclusively presumed disabled. *Id.* If the claimant's impairments are severe, but do not meet or equal a listed impairment, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141. In step four, the Commissioner determines whether the claimant can still

perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If she can still do past relevant work, then the ALJ should determine that she is not disabled. 20 C.F.R. § 404.1520(f). If, however, she cannot perform past relevant work, the burden shifts to the Commissioner, *Yuckert*, 482 U.S. at 144, to establish, in step five, that the claimant can perform work available in the national economy. *Id.* at 141-42; *see* 20 C.F.R. §§ 404.1520(e), 404.1520(f), 416.920(e), 416.920(f). Application of steps four and five requires the ALJ review the claimant's residual functional capacity and the physical and mental demands of the work she did in the past. 20 C.F.R. § 404.1520(f) & (g). "Residual functional capacity" (RFC) is what the claimant can still do despite her limitations. 20 C.F.R. § 404.1545. If the individual cannot do the work she did in the past, the ALJ must consider her RFC, age, education, and past work experience to determine whether she can do other work. *Id*. If the Commissioner establishes the claimant can do other work which exists in the national economy, then she is not disabled. 20 C.F.R. 404.1566.

In the present case, the ALJ applied the five-step sequential evaluation process and found, at steps one through three, that Plaintiff was not engaged in substantially gainful activity (Tr. 19) and that the medical evidence established Plaintiff has peptic ulcer disease and gastritis (Tr. 19). However, the ALJ concluded these impairments did not meet or equal the level of severity of any impairments described in the Listing of Impairments (Appendix I, Subpart P, Regulation No. 4) either individually or in combination (*Id*.). At step four, the ALJ determined Plaintiff could perform her past relevant work as a manager of a check cashing facility (Tr. 27).

///
///
///
///
///
///

**A.     Credibility Assessment of Examining Physicians' Opinions**

Plaintiff asserts the ALJ improperly discredited the opinions of two agency-appointed examining physicians and incorrectly substituted his own opinion for the opinions of those physicians (Doc. #15). Defendant argues the ALJ properly rejected both physicians' opinions (Doc. #16).

Under Ninth Circuit caselaw, the same legal standard applies in determining whether the Commissioner properly rejected the opinions of examining and treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The uncontradicted opinion of either physician may only be rejected for "clear and convincing" reasons. *Id*; *see also Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). The contradicted opinion of either can only be rejected for "specific and legitimate reasons" supported by substantial evidence in the record. *Chater*, 81 F.3d at 830-831; *see also Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Two distinctions the Ninth Circuit makes in properly rejecting a treating physician's opinion versus an examining physician's opinion include the following: (1) greater deference is accorded to the treating physician's opinion and (2) the type of evidence and reasons justifying rejection of an examining physician's opinion might not justify rejection of a treating physician's opinion. *Chater*, 81 F.3d at 831, n. 8.

    1.     Dr. Simon's Opinion

Plaintiff contends the ALJ improperly discredited Dr. Edward Simon's opinion that Plaintiff would require multiple breaks with free bathroom access in order to be employable (Doc. #15 at 5). Plaintiff appears to allege that because no other doctor opined on Plaintiff's need to use the bathroom, thereby, making Dr. Simon's opinion uncontradicted, the ALJ erred in not crediting the entire opinion (*Id*.).

Defendant argues the ALJ properly rejected Dr. Simon's opinion because his opinion is based on Plaintiff's own accounts of her symptoms, Plaintiff's allegations are unsupported by the record, Plaintiff's impairment is controlled by medication so it cannot be used as a basis for disability, there is no evidence Plaintiff lost weight due to constant diarrhea, and

5

Plaintiff's daily activities are inconsistent with chronic and uncontrolled diarrhea (Doc. #16 at 6-7).

The ALJ agreed with Dr. Simon's overall assessment of Plaintiff and only disregarded that portion of his opinion dealing with Plaintiff's need for free bathroom access (Tr. 21-22). The ALJ determined Plaintiff's complaints to Dr. Simon in June 2005, of having a one-year history of constant diarrhea, are inconsistent with the remainder of the record (Tr. 21). The ALJ cited to the following inconsistencies to support his determination: (1) in April 2005 Plaintiff reported her Crohn's disease was in excellent control and denied any changes in her bowel movements; (2) in August 2005, Plaintiff failed to report any difficulties with diarrhea to Dr. Simon; (3) there is no evidence of medical treatment for complaints of constant diarrhea; (4) after May 2003, Plaintiff was advised to return to her gastroenterologist if her symptoms reoccurred and there is no evidence of any return appointments; (5) in May 2003, Plaintiff informed her gastroenterologist her diarrhea symptoms were controlled after starting on medication and there is no evidence her medication regime does not continue to control her symptoms; and, (6) in August 2005, Plaintiff reported excellent control of her symptoms and only intermittent pain (Tr. 21-22).

The ALJ further pointed out that Dr. Simon's opinion is premised on Plaintiff's own subjective complaints of having a one-year history of diarrhea rather than clinical findings (Tr. 21). The ALJ may properly discredit a physician's opinion premised to a large extent upon Plaintiff's own accounts of her symptoms and limitations where those complaints have been properly discounted. *Morgan v. Commissioner of Social Sec. Admin.*, 169 F3d 595, 602 (9th Cir. 1999); *see also Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). The record indicates Dr. Simon is the only doctor Plaintiff complained to that "she is always in the bathroom....she went nine times yesterday during the day and four times at night....[and that] she would like to sleep ion [sic] the bathroom because she gets up so often to use it." (Tr. 606). There is no evidence of complaints to other physicians or any medical treatment for constant diarrhea even after making this statement to Dr. Simon.

Under these facts, the ALJ properly discounted Plaintiff's subjective complaints and, accordingly, properly discredited the portion of Dr. Simon's opinion based largely on those complaints. Furthermore, the ALJ gave clear and convincing reasons for discrediting Dr. Simon's opinion that Plaintiff would need to have free bathroom access in order to be employable.

### 2. Dr. Lewis' Opinion

Plaintiff asserts the ALJ erred in discrediting Dr. Lewis' opinion regarding Plaintiff's mental impairments (Doc. #15 at 5-6). Specifically, Plaintiff contends the ALJ erred in stating there is no affirmative evidence that Plaintiff ingested mercury, which allegedly caused her to suffer from dementia (*Id.*). Furthermore, the ALJ erred in determining Plaintiff's functioning was normal during treatment in 2005 because the record evidences a very lengthy treatment history of mental impairments, such as bipolar disorder, affective disorder and depression (*Id.*).

Defendant argues the ALJ properly rejected Dr. Lewis' opinion because Plaintiff's truthfulness about her illicit drug use casts doubt on her own truthfulness, which Dr. Lewis relied on in assessing Plaintiff's mental impairments (Doc. #16 at 7-8). Furthermore, Defendant argues Plaintiff left the mental status examination without completing her psychological testing and two months later another mental status examination showed no abnormalities (*Id.* at 8). Finally, Defendant argues that two months prior to Dr. Lewis' report, Dr. Lian examined Plaintiff and found her memory and concentration intact, that she was alert and oriented in three spheres and that she had a good fund of knowledge (Doc. #16 at 8).

///
///
///
///

7

The record indicates the ALJ did not discredit Dr. Lewis' entire opinion. The ALJ detailed his findings regarding Plaintiff's mental impairments based on Dr. Lewis' psychological examination (Tr. 23-25). The portion of Dr. Lewis' opinion the ALJ discredited concerned his assessment of rule out dementia due to mercury ingestion[1] (Tr. 23-25). The ALJ determined Dr. Lewis suspected Plaintiff suffered brain damage after she informed him she ingested mercury in a suicide attempt; therefore, Dr. Lewis assessed Plaintiff with rule out dementia (Tr. 23). However, the ALJ found Plaintiff's performance during psychological testing with Dr. Lewis, in June 2005, inconsistent with her presentation during the mental status examination in August 2005 (*Id.*). Additionally, the ALJ determined Plaintiff's alleged mercury ingestion is inconsistent with the record, which indicates she reported thoughts of ingesting mercury but never carried out those thoughts (*Id.*). Finally, the ALJ determined that Plaintiff's daily activities appeared inconsistent with a diagnosis of dementia and, instead, indicated a well-functioning person (*Id.*).

No other physician diagnosed Plaintiff with dementia and there is no other mention of dementia in the record. Accordingly, under these facts, the ALJ gave clear and convincing reasons for discrediting that limited portion of Dr. Lewis' opinion.

**B.   Severity Determination of Plaintiff's Mental Impairments**

Plaintiff asserts the ALJ incorrectly determined Plaintiff's mental impairments were non-severe. Specifically, Plaintiff contends the ALJ failed to account for Plaintiff's hospitalization in 2005 for suicidal thoughts and decompensation and her history of bipolar disorder and major depression recurrent and severe (Doc. #15 at 6). Plaintiff contends her mental impairments clearly meet the minimal requirements of 20 C.F.R. § 404.1520 because her bipolar disorder and manic depression have continued for a period of twelve months and

---

[1] While the record indicates the ALJ also discredited Dr. Lewis' opinion that Plaintiff "might have a mental illness that cycles", this reference will be discussed in the following section – Severity Determination of Plaintiff's Mental Impairments.

significantly interfere with her ability to function in a work setting and carry out complex instructions (*Id.*).

Defendant argues the ALJ properly found Plaintiff's mental impairments non-severe because they were controlled by medications and did not meet the twelve-month duration requirement (Doc. #16 at 10).

Plaintiff carries the initial burden of establishing her severe mental impairments significantly limit her ability to perform basic work activities. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). She must provide medical evidence showing how severe her mental impairments are during the time disability is alleged. 20 C.F.R. §§ 404.1512(c), 416.912(c)(2001).

Plaintiff asserts she has a long history of mental impairments dating back to 1984 when she was first diagnosed with "bipolar manic depressive chronic depression" at UCLA mental hospital (Tr. 142). The record indicates Plaintiff suffered from mental impairments dating back to at least 1995[2] (Tr. 111). However, in his decision, the ALJ makes no reference to Plaintiff's prior disability period from 1995 through 1999.[3] In fact, despite Plaintiff's long history of depression, it appears the ALJ only considered medical evidence of Plaintiff's mental impairments beginning with Plaintiff's new onset date of May 2003[4] (Tr. 22-25).

The ALJ made the following findings in regards to Plaintiff's mental impairments: (1) although Plaintiff was diagnosed with mood disorder and rule out amphetamine abuse after

---

[2] Plaintiff was previously allowed disability benefits on October 18, 1995, with an onset date of February 10, 1995, due to an affective mood disorder (Tr. 111). Plaintiff's benefits ceased in June 1999 when it was determined her condition had improved (*Id.*).

[3] At the hearing, the ALJ found Plaintiff's prior disability case moot due to the fact that she returned to work (Tr. 661).

[4] Plaintiff alleged a new onset date of June 1, 2002 on her applications for benefits (Tr. 19). However, Plaintiff submitted evidence to the ALJ of employment from January 2002 until at least April 2003; therefore, the ALJ utilized May 2003 as the alleged onset date of Plaintiff's physical and mental impairments noting the record documented medical treatment for digestive problems at that time (*Id.*). The May 2003 onset date is not in dispute.

expressing suicidal ideation in May 2003, Plaintiff's mood disorder was stable and controlled due to medication in August 2003 (Tr. 22-23); (2) despite Plaintiff being admitted with depressive decompensation and suicidal thoughts associated with substance abuse in April 2005, upon discharge Plaintiff denied suicidal ideation and her memory and concentration were intact (Tr. 23); (3) although there was medical evidence showing a suicide attempt in April 2005 associated with a positive test for methamphetamine, there was no evidence in the medical records of Plaintiff's alleged suicide attempt by ingesting mercury in December 2004; there was only evidence of Plaintiff threatening to ingest mercury (Tr. 24); (4) while considering the recent 2005 evidence, Plaintiff's affective disorder, bipolar type was in remission and was, therefore, non-severe within the meaning of the Social Security Act (*Id.*); (5) Plaintiff was not credible due to inconsistencies (denying using street drugs or abusing alcohol where the medical records documented positive tests for methamphetamine in May 2003 and April 2005[5]); poor performance during her consultative examination; normal mental status examinations in April and August 2005; and, her reported daily activities, which clearly demonstrated Plaintiff did not suffer from any form of dementia (*Id.*); (6) there was no evidence of an active affective disorder affecting Plaintiff's ability to work despite the fact the examiner indicated Plaintiff might have a mental illness that cycles (*Id.*); (7) there was no evidence that proper treatment and medication support would not resolve Plaintiff's symptoms within twelve months, as evidenced by her prior treatments and medication support[6] (*Id.*); and, (8) although Plaintiff was diagnosed with bipolar disorder and major depression in August 2005, this diagnosis was provided by a licensed social worker and not a medical doctor (Tr. 24-25).

---

[5] Plaintiff denied using methamphetamine and testified she used to take tea that contained the same ingredients as Excedrin, which contains amphetamine (Tr. 641-642).

[6] The reference to prior treatments and medication support and the reference to Plaintiff indicating, in 1995, that she ingested mercury are the only indications in the ALJ's decision that he considered medical evidence of Plaintiff's mental impairments predating the May 2003 onset date.

The ALJ accounted for Plaintiff's hospitalization in 2005 for suicidal thoughts and decompensation; (Tr. 23) however, it appears the ALJ did not consider this evidence together with Plaintiff's long history of bipolar disorder and severe depression in his severity determination. The ALJ was required to consider all of Plaintiff's medical records, including those contained in her past disability case (where benefits were awarded and subsequently terminated due to medical improvement[7]), in making his severity determination of Plaintiff's subsequent mental impairments.

The Ninth Circuit has not expressly addressed this issue; however the case law indicates the ALJ was required to consider all of Plaintiff's relevant medical evidence in the record.

> Individuals who earlier established a period of disability for which the Secretary terminated benefits because of a cessation of the disability may become reentitled to disability payments at a later date if they again satisfy all of the requirements of the Act. *See, e.g.,* 20 C.F.R. §§ 404.250-404.242 (special computation rules for people who had an earlier period of disability and become reentitled to payments at a later date); 20 C.F.R. § 404.315 (individuals who were previously entitled to disability benefits need not satisfy the waiting period requirement when they apply for disability benefits based on a current disability for which they are insured); 20 C.F.R. § 404.1592(2)(ii) (no trial work periods for individuals receiving disability benefits in a second period of disability for which there was no waiting period).

*Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1460 (9th Cir. 1995). In satisfying all the requirements of the Act, Plaintiff must meet both the severity and duration requirements for the new period of disability. SSR 82-52 ("An individual who was previously entitled to a period of disability must again meet the duration requirement before a subsequent period of disability can be established, even though a second waiting period under title II may not be required in certain circumstances.").

Plaintiff must meet the twelve-month duration requirement for any new mental impairments; however, in meeting the duration requirement for any mental impairments

---

[7]Although Plaintiff's prior disability benefits were terminated in 1999 due to medical improvement, there are indications in the record her benefits terminated due to her failure to appear for a scheduled hearing (Tr. 660-661).

11

related to her previous disability period, Ninth Circuit case law and SSR 82-52 suggest tacking two "related" impairments, where there has been no lapse in insured status, is permissible. *See Smolen v. Chater*, 80 F.3d 1273, 1280 (9th Cir. 1996); *Flaten*, 44 F.3d; SSR 82-52.

SSR 82-52 provides, in pertinent part:

Severe impairments lasting less than 12 months cannot be combined with *successive, unrelated impairments* to meet the duration requirement....Onset cannot be extended back to the date of the first impairment *if that impairment itself was disabling for less than 12 months.*

*Id* (emphasis added).

The Ninth Circuit expressly interprets SSR 82-52 as allowing tacking for reentitlement purposes. *Smolen*, 80 F.3d at 1280. In *Smolen*, the Ninth Circuit refused to resolve the question of whether a plaintiff can tack *unrelated* impairments in order to meet the duration requirement. Accordingly, it can be implied the Ninth Circuit interprets SSR 82-52 as allowing tacking of successive, *related* impairments in order to meet the duration requirement and allowing a plaintiff to extend onset back to the date of the first impairment if that impairment met the duration requirement. *Id*.

In *Flaten*, the Ninth Circuit rejected the relation-back doctrine, holding "an individual cannot receive disability benefits for a recurrence of a disability, after a period of medical improvement when the individual was no longer disabled under the Act, *unless the individual can establish that the current period of disability began on or prior to the expiration of insured status.*" 44 F.3d at 1458 (emphasis added). The relation-back doctrine deals with tacking a subsequent disability that recurs after the expiration of insured status. *Id*. Here, Plaintiff's insured status is not in dispute. Accordingly, under *Flaten*, Plaintiff may receive disability benefits for a recurrence of a disability after a period of medical improvement where she was no longer disabled under the Act. *Id*.

///
///

12

In order for Plaintiff to show a recurrence of her disability after a period of medical improvement, she must provide medical evidence of the disability prior to the medical improvement. Plaintiff did just that in this case. And, in order for the ALJ to determine if Plaintiff's mental impairments are, in fact, a recurrence of her disability after a period of medical improvement, he must look at the medical evidence contained in her previous disability case together with any new medical evidence of her subsequent mental impairments. Furthermore, even if Plaintiff's insured status had lapsed, the Ninth Circuit holds that plaintiff must then show the current disability existed continuously since some time on or before the date her insured status lapsed and, in order to do that, Plaintiff would need to provide evidence of the disability *prior to the period of the medical improvement*. *Flaten*, 44 F.3d at 1458.

Other district courts implicitly agree that the ALJ must consider the entire record, including medical evidence of a plaintiff's previous mental impairments during a prior disability period, in determining the severity of a plaintiff's subsequent mental impairments. In *Cruise v. Harris*, 510 F. Supp. 534, 535 (D. Mont. 1981), the plaintiff was granted a closed period of disability from *June 10, 1970 through June 14, 1971*. Then, on *December 19, 1978*, Plaintiff filed a subsequent application for disability benefits. *Id.* at 534. The ALJ and the district court reviewed the plaintiff's medical records *dating back to 1970* acknowledging the records showed the plaintiff experienced periods of mental impairments dating back prior to the expiration of his closed period of disability. *Id.* at 535. And in *Lebus v. Harris*, 526 F. Supp. 56, 61 (N.D. Cal. 1981), the court opined:

> The ALJ ascribed particular importance to the fact that the plaintiff had certain symptom-free periods that precluded him from meeting the statutory requirement that an impairment "last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A)(emphasis added). While the mere existence of symptom-free periods may negate a finding of disability when a physical impairment is alleged, symptom-free intervals do not necessarily compel such a finding when a mental disorder is the basis of the claim. Unlike a physical impairment, it is extremely difficult to predict the course of mental illness. Symptom-free intervals, though sometimes indicative of a remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse. Realistically, a person with a mental

13

>   impairment may be unable to engage in competitive employment, as his ability to work may be sporadically interrupted by unforeseeable mental setbacks.

526 F. Supp. at 61.

Here, the ALJ's opinion indicates he did not consider medical evidence of Plaintiff's mental impairments from her previous disability period in determining the duration and severity of her subsequent mental impairments. Instead, the ALJ simply determined Plaintiff's "mental illness" did not meet the duration requirement because there was no evidence her symptoms would not resolve within twelve months with proper treatment and medication support (Tr. 24). The ALJ also determined Plaintiff's affective disorder, bipolar type was in remission at the time of the evaluation; therefore this disorder was non-severe (*Id.*).

In thoroughly reviewing the entire record, the medical evidence indicates Plaintiff has a long history of mental impairments. Accordingly, the ALJ erred in failing to address or take into account all the relevant medical evidence dealing with Plaintiff's mental impairments.

**C.     RFC Assessment**

Plaintiff asserts the ALJ used an incomplete RFC to determine Plaintiff could return to her past relevant work due to improperly discrediting Plaintiff's examining doctors and incorrectly determining Plaintiff's mental impairments were non-severe. Defendant argues the ALJ's determination is supported by substantial evidence.

Pursuant to 20 C.F.R. § 416.923:

>   In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, *the combined impact of the impairments will be considered throughout the disability determination process.*

*Id* (emphasis added).

///

14

Due to the error in the ALJ's step two analysis, Plaintiff's RFC may also be erroneous.

## III. CONCLUSION

There are clearly outstanding issues in this case that must be resolved dealing with the severity of Plaintiff's mental impairments and their impact, if any, on Plaintiff's RFC. Accordingly, the district court should remand this case back to the ALJ for further administrative proceedings consistent with the terms of this Recommendation.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand (Doc. #15) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion to Affirm (Doc. #16) be **DENIED** and that the decision of the ALJ be **REVERSED AND REMANDED** for further proceedings consistent with the terms of this Recommendation.

DATED: September 26, 2007.

_____
UNITED STATES MAGISTRATE JUDGE